Good morning. May I please support Hugo Larios on behalf of Petitioner Mr. Espino. The issue before this court is whether a conviction of forgery in violation of Arizona Statute 13-2002 constitutes a crime involving moral trepidation. We posit that it is, first of all, Your Honor, that it is not categorically a crime involving moral trepidation. There's been a lot of discussion in the prior cases about intent to defraud automatically, end of discussion, constitutes a CIMT, and I don't believe that that's the end of the analysis. In order to determine whether a statute constitutes a crime involving moral trepidation, we need to compare the elements of the statute against the generic definition of a crime involving moral trepidation. So how do we define crime involving moral trepidation or CIMT? How do courts have historically defined that term? It is my position, Your Honor, that not only to constitute a CIMT, not only does the offense require an intent to defraud, but it requires a plus, an additional element, which raises to the level of base, deprived, and contrary to the morals of society. The several examples that have been cited are the case of the CIMT. You've missed me. It just seems to me that it's intent to defraud, we've already indicated, is sufficient to show moral trepidation. You mean there's something else that's needed before you demonstrate moral trepidation? Yes, sir. That is my position. And the particular case you rely on where we've held that there's this plus moral trepidation is which? Well, Your Honor, the courts specifically in Navarro-Lopez stated a whole list of examples listing offenses that included intent to defraud that did not necessarily raise to the level of base, vile, and deprived. The best example is the Enron example, fraud committed by Enron executives to enrich themselves versus the widow who cashes the deceased husband's check to feed her family or the gentleman that uses the brother's ID to buy beer. So in those instances, all have intent to defraud, but some cases raise to the level of base, vile, and deprived, while others have not. There are a list of cases that show the base, vile, and deprived generally require gaining something of value, and not just something of value. Anything can be gained of value. But that value has to be, again, raised to the level of base, vile, and deprived. Tijani, the gentleman was using credit cards or somebody else's credit cards to gain something of value. Rodriguez-Valencia, this Court in 2011, there was use of counterfeit trademark. Even the Supreme Court case, Jordan v. DeGeorge, there was a conspiracy to fraud and evade taxes. So my point, Your Honors, is that just because the statute includes language of intent to defraud, that does not end the analysis. Therefore, I'm sorry? Okay. So I thought you were arguing that so what is it that your client did that was not fraud? He completed, I believe, an A-4 employment documents so that he could obtain employment. So in this Court That's not something of value? It is, Your Honor, but to obtain employment does not raise to the level of base, vile, and deprived. And that, this Court in Beltran-Girado found that. I see. And in Beltran, so you're relying on Beltran-Girado? Yes, Your Honor. Now, there's been a And that was the argument that you made before the Board as well, I take it? Yes, Your Honor. Okay. And the Board said, well, but that was cited under a particular statute that exempted certain conduct from the context of that statute. But that isn't here. Exactly, Your Honor. And that's precisely Beltran-Girado, after that sentence, specifically stated whether the individual was exempted for registry purposes or not. Literally, the Court said that's not the question before us. Literally, the question before us is whether the conduct engaged by the individual constitutes a CIMT. And that's my position. A conduct, it's either a CIMT or a non-CIMT. It's either a CIMT or it is not. It is not a CIMT for this particular purpose. It's not a CIMT for this particular registry or statute. Either the conduct is a CIMT or it is not. So, therefore, we need to look into the conduct of the individual to determine whether that conduct raises to the level of vain, violent, and deprived, which has historically been the definition of a crime involving moral turpitude. Wasn't Beltran involving a different statute that was set up for a different purpose? Yes, Your Honor. That involved a using false documents. Use of credit card to get your job. They were worried about people getting they want to get out and work, and so they've made an exception there. But it's – I don't see how you can take that as a springboard to say that all of our other cases that have said that intent to defraud is moral turpitude. I don't see how we can just erase them based upon one case involving another statute, which clearly dealt with trying to give a break to people who are illegally in the country working and using their – a phony card to get a job. It just seems to me you're taking an exception and making it the rule. I don't know how you make that jump. Your Honor, if I may, my position on Beltran-Tirado is precisely your point that everybody analyzes Beltran-Tirado as to, oh, it's only relevant to that statute because there was an exempt to avoid prosecution. And my point, with all due respect, Your Honor, is that that's not the point of Beltran-Tirado, because right after that sentence, the Court literally said whether the person was exempt from prosecution or not is not the point in this case. The point and the issue in this case is whether the person's conduct constituted a crime involving moral turpitude. And that's precisely my point, Your Honor. It doesn't matter whether – we cannot limit Beltran-Tirado to that specific statute of exemption because the Court literally said that's not the point before us. We need to engage in the activity or the conduct of the individual to determine whether that conduct constituted a crime involving moral turpitude. And then we would just brush away all of our cases that say intended to defraud is moral turpitude based upon the – what is clearly a separate statute set up for a separate reason. No, sir. I'm not asking the Court to wash away all the other cases saying that intent to defraud constitutes CIMT. What I'm asking the Court to do is that just because an offense includes language of intent to defraud does not automatically make it a CIMT. And all the cases that Your Honor is referring to, again, point to some pecuniary gain, something of value, counterfeiting trademarks, the in-ground people enriching themselves to the detriment of other individuals. But just because intent to defraud constitutes – historically has been involved in the crimes involving moral turpitude, that's not the end of the inquiry, Your Honor. It's intent to defraud plus raising the charge. Certainly it wasn't in Beltran, but clearly, Beltran was a different situation. But you're riding Beltran pretty far on this case. Well, again, Your Honor, Beltran specifically said whether the person was exempt or not, that's not the point. The point is where the conduct was based while in practice. You're relying on the language that the view of Congress concerning the lack of moral turpitude involved in Beltran's actions. Is that what you're relying on? We said that the particular amendment with respect to the exemption from prosecution for past use of Social Security numbers, that that amendment doesn't apply to Beltran, but its rationale illuminates the view of Congress concerning the lack of moral turpitude involved in Beltran's actions. So you're relying on Beltran's actions? Is that the language you're relying on? Correct, Your Honor. Okay. Thank you. I've run out of time. May I have a minute for rebuttal? We'll hear from the government and we'll make sure you get a chance to respond. Yes. Thank you. May it please the Court. Jonathan Robbins here again on behalf of the Attorney General. Again, this is a similar case to the last statute, to the last case, in that we're dealing again with a forgery conviction which involves this turpitudinous element, intent to defraud. So unless the Court is interested, I won't repeat the same categorical approach and why this is categorically different. How is this different from Beltran-Torado? He forges something in order to get a job. In Beltran-Torado, the petitioner in that case has a false Social Security card. She's using it to obtain a job. And in Beltran-Torado, we say that's not crime of moral turpitude. How is this case different? Well, for a number of reasons. First of all, in Beltran-Torado, Congress had created a specific exemption from prosecution for this particular type of conduct, this putting forward a Social Security card to get employment. And we don't have a similar exemption here in this particular statute. Congress had created that going forward. It did not mean – Congress, in Beltran-Torado, Congress had created that exception going forward. It did not make it retroactive. She had engaged in conduct that was criminal and had never been decriminalized in terms of when she did it. Right. Well, what the Court – So she committed a crime. There's no question about that. Yes. And the Court sort of inferred from – but the Court inferred from the exemption that Congress had put forward with respect to prosecution and through legislative history had inferred that they didn't want to consider this turpitude in this conduct, but that they were sort of giving a break. Well, Congress very clearly said this is not – this conduct does not involve moral turpitude in the statute. So if Congress said that in that statute, and the conduct in that statute was using a false Social Security card in order to obtain employment, so Congress, I guess, has just told me that using a forged document to obtain employment is not morally turpitudinous. So why is it here? Well, what I would say to that is that I don't know that necessarily Because it's not a Social Security card but some other document? Well, it's not clear that Congress necessarily said that this wasn't turpitudinous conduct. What they said is that they wanted to exempt this turpitudinous conduct from prosecution. So we're talking about footnote 8 of the opinion. Just a moment. Footnote 8 of Beltran-Torado, Your Honor? Yes. Yes. Congress was careful to exclude from the exemption those who used a false Social Security number for otherwise illegal activity. So – but – and Beltran-Torado, I might add, also did not say that this was a turpitudinous conduct. Looking at the language there, which is your argument, what is the language of footnote 8 that leads you to conclude your point? You made your point. It's there in footnote 8. But I think what we're looking for is what language you're going to rely upon. I'm not sure exactly what the language is, other than to say – well, I mean, Beltran-Torado LCD, Grant.    Is that an exclusion? The action is a prelude. Well, this is an exclusion. And Congress made a specific exclusion. They use the word exclude, and they make otherwise illegal activity, such as bank fraud or drug trafficking. They – they make the exclusion. And they – they indicate it's a specific exclusion for a specific purpose. Now, I assume your argument is that based upon that, we can't go any further on the train of Beltran than – than at the exclusion. Exactly, because there's no similar exclusion for this particular criminal statute. Not to mention that Beltran-Torado didn't even address the – the categorical approach versus – the modified categorical approach, the – the approach that's outlined in Taylor and Silva-Trevino. They actually went with a different approach, Malum in se versus Malum prohibitum. It's just – it doesn't even apply the – and your Honor pointed out that to follow this rationale would be to wipe out all the case precedent with respect to these crimes involving the intent to defraud. Again, the – You see, I wouldn't go so far as that. Here's the language that gives me pause with respect to your argument. This is the language quoted by Judge Canby in Beltran-Torado coming from the committee report where – and I'll just read it to you. Conferees intend that this exemption apply only to those individuals who use a false social security number to engage in otherwise lawful conduct. For example, an alien uses a false social security number in order to obtain employment, which results in eligibility. Conferees believe that individuals who are provided exemption from prosecution under this proposal should not be considered to exhibit a moral turpitude with respect to the exempted act for purposes of determination made by the INS. Well, if – there's questions as to whether or not – or what importance we attach to a committee report. But assuming that I can attach real importance to that, the committee report has just told us that someone who engages – who uses a false document in order to obtain exemption, unless you're going to construe this to say, well, it's not morally turpitudinous if it's a social security card, but it is if it's another document used for precisely that purpose. So how do I deal with that question and this language? Well, I would note that Congress, though it may be in the legislative history, did not inscribe that into the statute. What they did in the statute was they created exemption, but they didn't say anything about it being turpitudinous conduct. Now, the Court did infer in this particular situation in Beltran-Torado, infer from the legislative history that it was not turpitudinous conduct. But, again, this would fly in the face, I think, of the – you know, this Court – in fact, the Board cited to it in its decision in Plaintiffs v. Holder, the long – it noted the longstanding rule that crimes that have fraud as an element, as an element, the intent to defraud, are categorically crimes involving moral turpitude. That's 2011. Again, that goes back to this Court's decision in Tull v. Mukasey. But how do I – but I see Beltran-Torado as a very specific carve-out of using a forged document to obtain employment as not being morally turpitudinous, unless you're going to tell me that there's a distinction for this purpose related to a Social Security card and some other forged document. Well, again, again, I would note that Congress didn't specifically inscribe that language into the statute to say that it wasn't turpitudinous conduct. So we said that that's what they intended. So what's troubling me is our language in Beltran that seems to say that the Congress didn't – intended not to treat using false documents for purposes of getting employment as morally turpitudinous. But what I thought you were going to say was that that was all in the context of the special kind of amnesty statute that was passed in the 80s. Well, I thought we'd addressed that it was in the context of that, and this was just applied to this case, and that it doesn't – there is no similar such exclusion or exemption with respect to this particular statute that we're dealing with here today. I'm sorry if I didn't make that clear. But – So Congress's intent that this kind of conduct not be morally turpitudinous was for that day and train only? The dissent in that case sort of talks about it. They were cutting the alien a break. It was a sympathetic circumstances. Congress is essentially cutting a break for these aliens that have been in the country for a long time under these amnesty and registry sort of forms of relief. But it's not – it wasn't meant to apply outside this very specific carve-out with respect to that form of relief. I take it we have – what is our authority since – this is 1990, 2000. What is our authority on Beltran? What is the authority on him? Yes. What have we – how have we treated Beltran? Well, I would say in the face of all the different case law that's talked about, Your Honor, with intent to defraud as inherently – as categorically a crime involving moral turpitude, I would say that it hasn't really followed it. Neither have any of the other circuits. Have we distinguished it? Not to my knowledge. I haven't seen it distinguished. But – and I would also note that the other circuits, too, have considered the issue, haven't followed the Court's reasoning in that regard, either, because, again, as I've noted before, Congress didn't actually inscribe that particular legislative history into the statute itself. But it is case precedent. I don't mean to suggest that it isn't. But it seems to fly in the face of all the case law afterwards, which is specifically – which is directly on point with the case that we have here, which involves this turpitudinous element of intent to defraud. So unless there are any other questions, I would thank the Court very much for its time. Let me ask you a different question. And you've kind of covered it in point, and I'm not. But I understand why fraudulent intent to deceive for purpose of obtaining benefit or for purpose of inflicting harm on the person – I get that. But explain to me why someone who's trying to get a job and uses a forged document in order to get the job, in other words, to do otherwise legal conduct, who then, as far as the record shows, works appropriately, earns his money, and so on, what's so offensive about that? Why is that morally turpitudinous? Why is that not just somebody trying to get a job? Well, I think what's inherently turpitudinous is the actual intent to defraud. You know – You're just coming back to the language. I'm trying to get at some underlying sense. What's morally turpitudinous? That's a bad word. I mean, when we say something is CIMT, we attach really adverse consequences to it. So in other words, it has to be a pretty bad act. Why is it such a bad act when somebody wants to get a job and then perform the job, providing benefit to the employer and providing benefit to himself in the context of an ordinary employment relationship? What is so awful about that that we will attach to it the label, this is morally turpitudinous? Well, I don't know that necessarily wanting to get a job is itself the turpitudinous conduct. It's the willingness to defraud somebody that is the turpitudinous conduct. I mean, that's – again, that's sort of getting back to – you run into a problem where you say, oh, this person committed a crime, but they meant well. You know, they still committed the crime. It's sort of – that's sort of allowing – Trying to get a job you're not entitled to. Exactly. It's something you're not entitled to, so – I got it. Okay. Thank you very much for your time. Thank you. Let's put a minute on the clock. Thank you, Your Honor. Your Honor, just briefly, I just want to reiterate the point that Beltran-Tirado is not limited to the specific circumstance of the registry and the exemptions of that case, if I may. The court on page 1184. But the question before us is not whether Beltran should have been exempt from the case, but whether the crimes of which she was convicted involve moral turpitude. Further down, it says, the only reason Beltran-Tirado will not be immunized by Section 408D is because she committed the act a week too late. Quote, those deficiencies have nothing to do with the morality of her conduct. And that's my whole point. We – in order to determine whether a crime is – involves moral turpitude, we need to look at that morality of the conduct, and that's Beltran-Tirado. Further down, it said, malum prohibitum versus mala in se. Okay. Okay. Thank you very much. Thank you. I thank both sides for your arguments. The case of Espino-Castillo v. Holder is now submitted for decision.
judges: WALLACE, SCHROEDER, FLETCHER